

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Zachary B. Stendig*  *Suite 400*  DIRECT: 410-209-4893
*Assistant United States Attorney*  *36 S. Charles Street*  MAIN: 410-209-4800
*Zachary.Stendig@usdoj.gov*  *Baltimore, MD 21201-3119*  FAX: 410-962-3124

August 6, 2020

The Honorable Stephanie A. Gallagher
United States District Judge
United States Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

    Re    United States v. Damien Smith
            Crim. No. SAG-20-047

Dear Judge Gallagher:

    We are writing in advance of the sentencing in the above-captioned case, currently scheduled for August 13, 2020. Mr. Damien Smith (the "Defendant") has requested that his sentencing occur immediately following his guilty plea. The Government does not object to proceeding in that manner. The Government respectfully recommends, and the parties agree, that the Court impose a 66-month (five and a half year) prison sentence for the Defendant.

### Introduction

    On February 5, 2020, a Grand Jury in the District of Maryland issued an indictment charging the Defendant with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1); Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). On or about July 2, 2020, the Defendant agreed to plead guilty to Count One of the indictment, Felon in Possession of a Firearm. The Defendant's plea is pursuant to a written plea agreement. The terms of the agreement, entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), included an agreement between the parties that a sentence of 66 months of incarceration is the appropriate disposition of the case. For the reasons discussed below, the Government recommends a sentence of 66 months' imprisonment for the count of conviction under 18 U.S.C. § 922(g). The Government reserves the right to supplement this memorandum with evidence and argument at the sentencing hearing.

### Factual Background

    On October 3, 2019, at approximately 11:28 a.m., Baltimore City Police Department ("BPD") officers observed the Defendant emerge from an alley and walk southbound in the 4100

1

block of Elkador Avenue in Baltimore, Maryland. BPD officers knew this was a high-crime area marked by drug trafficking and firearm related offenses. The Defendant was wearing a black satchel across his shoulder in front of his left arm. The satchel appeared heavily weighted. Once the Defendant saw the officers, he attempted to shield the satchel by walking with a stiff left arm that disrupted a natural stride. The Defendant kept his left arm over the satchel, very tight to his body. The officers drove their vehicle next to the Defendant and asked him if he had a firearm in his bag. The Defendant replied "no" and pulled containers of vape oil out of his bag and showed them to the officers. As the Defendant was doing so, he held the bottom of the satchel, which still appeared heavily weighted. As the Defendant held the satchel, BPD officers observed the imprint of a handgun at the bottom the bag.

The officers stepped out the car and approached the Defendant. One of the officers grabbed the bottom of the satchel where he had seen the imprint of a firearm and felt the barrel of a gun. The officers opened the satchel and recovered a stolen, KAHR CW.45 caliber handgun, bearing serial number SD7206. It was loaded with seven rounds of .45 caliber Winchester FMJ cartridges in the magazine and one round in the chamber. The satchel also contained another small black bag with an additional six rounds of .45 caliber Winchester FMJ cartridges. The firearm and ammunition meet the federal definition of firearm and ammunition, respectfully, and were manufactured outside the state of Maryland. The satchel also contained a clear plastic bag with 66 red top vials of cocaine, with a gross weight of approximately 65 grams. The packaging and quantity of these narcotics are consistent with drug trafficking. Prior to possessing the firearm on October 3, 2019, the Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year, and his civil rights had not been restored.

## Sentencing Procedure

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth a multi-step process for imposing sentence in a criminal case. *Id.* at 51–52. A sentencing court should begin by correctly calculating the applicable guidelines range. *Id.* at 49. After providing the parties with an opportunity to present argument, the district court should then consider the factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49–50; *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011).

## Sentencing Guidelines and Criminal History Calculation

The Government agrees with the criminal history calculation set forth in the April 14, 2020 Pre-Plea Criminal History Report. Thus, the Defendant's criminal history is a category V.

In the plea letter dated July 2, 2020, the parties agreed to the following calculations with regard to the Sentencing Guidelines:

- The base offense level is 20 because the Defendant committed the instant offense subsequent to sustaining one felony conviction for a crime of violence or controlled substance offense. U.S.S.G. § 2K2.1(a)(4)(A).

- The offense level is increased by 4 levels because the Defendant possessed the firearm in connection with another felony offense, to wit,: possession with intent to distribute controlled dangerous substances.  U.S.S.G. § 2K2.1(b)(6)(B).
- The offense level is increased by 2 levels because the firearm possessed by the defendant was stolen.  U.S.S.G. § 2K2.1(b)(4)(A).
- The offense level is decreased by 3 because of the Defendant's acceptance of responsibility.  U.S.S.G.  § 3E1.1(a)-(b).
- Total Adjusted Offense Level: 23

Accordingly, with a total adjusted offense level of 23 and a criminal history category of V, the advisory sentencing guidelines range is 84-105 months. To be clear, the agreed upon sentence is 18 months below the lowest end of the advisory sentencing guidelines.

<u>The Court Should Not Rule on Whether the Stolen Firearm Enhancement Should Be Applied, But, to the Extent the Court So Chooses, it Should Find the Enhancement Applies</u>

The Defendant argues that the 2-level enhancement for possession of a stolen firearm should not be applied in this case because there is no evidence that the Defendant stole the firearm or knew the firearm was stolen.  *See* ECF No. 43, at 3-4.  As a threshold matter, the Court should determine that a ruling on this issue is unnecessary.  Pursuant to the Federal Rules of Criminal Procedure, the Court, at sentencing:

> [M]ust—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that *a ruling is unnecessary either because the matter will not affect sentencing*, or because the court will not consider the matter in sentencing.

Fed. R. Crim. P. 32(i)(3)(B) (emphasis added).  Resolution of whether the 2-level enhancement should be applied will not affect sentencing.  The Defendant does not seek a sentence below the 66-month term of imprisonment to which the parties' agreed.  He merely requests a finding that the stolen firearm enhancement does not apply; that his base offense level is 21, as opposed to 23; and that his guidelines range is 70-87 months, as opposed to 85-105 months.  This argument is, therefore, merely academic, as such a finding would have no bearing on the Defendant's sentence.

Regardless, U.S.S.G. § 2K2.1(b)(4)(A) should be applied in this case.  As the Defendant noted in his sentencing memorandum, the application notes to U.S.S.G. §  2K2.1(b)(4)(A) explicitly state that the enhancement applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen."  *Id.* § 2k2.1 cmt. N.8(B).  Importantly, "every circuit to consider a challenge to the Stolen Gun enhancement where the defendant had no knowledge that the firearm was stolen has upheld it."  *See United States v. Faison*, No. GJH-19-27, 2020 WL 815699, at *7 (D. Md. Feb. 18, 2020) (collecting cases).  Policy does not dictate a different result here.  While Judge Hazel declined to apply the 2-level enhancement in *Faison*, his decision to do so deviates from numerous courts before him and should not be extrapolated to the case at bar, the facts of which are vastly different.  In *Faison*, the defendant, after having been involved in a road-rage incident, went back to his house to retrieve weapons to protect himself from the individual

3

involved in the incident. *Id.* at *2. He was later pulled over while driving his vehicle, at which time police officers discovered the firearms in his car. *Id.*

Here, the Defendant made the conscious decision to carry a stolen firearm in broad daylight on the streets of Baltimore in a satchel with 66 vials of cocaine. As the Fourth Circuit noted in *United States v. Taylor*, "the stolen firearm enhancement serves an important purpose." 659 F.3d 339, 343 (4th Cir. 2011). The Sentencing Commission consciously chose to promulgate this guideline because stolen firearms "are used disproportionally in the commission of crime" and should, therefore, be treated more severely. *Id.*; *see also United States v. Ellsworth*, 456 F.3d 1146, 1150 (9th Cir. 2006) (noting that a felon in possession of a stolen firearm is more culpable than one who acquires a gun legally because stolen weapons are more frequently used to commit crimes). The *Taylor* Court, in upholding the application of the stolen firearm enhancement against a defendant who had been convicted of violation 18 U.S.C. § 922(g), explained:

> If [the defendant was] actually concerned about the risk of acquiring a stolen weapon, there was a readily available solution: he could have simply obeyed the law. When he decided not to do so, he assumed the attendant risks of criminal conduct, including the possibility that he newly-acquired firearm might be stolen.

659 F.3d at 343. The same logic applies here. The Defendant chose to possess a firearm. In doing so, he assumed the risk that the firearm would be stolen. It does not matter whether he was unaware that the firearm was stolen, or whether he stole the firearm himself. Therefore, should the Court choose to resolve this issue, the Court should find that the stolen firearm enhancement applies.

## **Factors Set Forth in 18 U.S.C. § 3553(a)**

The factors set forth in Title 18, United States Code, Section 3553(a) include: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the Defendant; (6) the need to provide the Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentencing disparity among Defendants involved in similar conduct who have similar records. 18 U.S.C. § 3553(a).

The Government submits that a sentence of 66 months of imprisonment, which is significantly below the advisory guidelines range under the calculation recommended by the parties, is sufficient, but not greater than necessary, to accomplish the goals of the Sentencing Reform Act. In recommending this sentence, the Government acknowledges and recognizes the Defendant's early acceptance of responsibility, criminal history, and other personal characteristics. The Government does not believe, however, that a sentence lower than 66 months' imprisonment would be sufficient or appropriate in this case, particularly in light of several of the relevant Section 3553(a) factors that are discussed below.

### Nature and Circumstances of the Offense (3553)(a)(1))

The Defendant possessed a stolen firearm and approximately 65 grams of cocaine, packaged in 66 individual vials. The seriousness of this conduct cannot be minimized. Baltimore City is plagued by gun violence. In 2019, when the defendant committed the instant offense, 309 of the 348 homicides resulted from gunfire.[1] Unlawful possession of a firearm not only threatens public safety, but also perpetuates a cycle of violence that has led to the death or serious bodily injury of thousands of Baltimore residents. The drug trafficking trade is no different. Narcotics beget violence. The two are unequivocally and dangerously linked. *See United States v. Carter*, 750 F.3d 462, 470 (4th Cir. 2014) (discussing link between drugs and violence). And, the fact that the Defendant had *both* a stolen firearm and 66 grams of cocaine while walking down the street in broad daylight demonstrates his blatant disregard for the safety of those around him and the rule of law.

Such criminal conduct requires a significant period of incarceration that reflects the seriousness of the offense, and a 66 month sentence accomplishes that objective.

### History and Characteristics of the Offender (3553(a)(1))

The Defendant's criminal history is a category V. He has, among others, one prior conviction for CDS distribution and two prior convictions for felon in possession of a firearm. The latest of the two firearms offenses, which was federally prosecuted, occurred in 2013 and resulted in a sentence of 57 months. Despite these prior convictions, the Defendant has continued to engage in criminal activity. He is a recidivist drug dealer and possessor of firearms. Nonetheless, the Defendant is closely involved with his family, including his six children, who reside in Baltimore City. *See* ECF No. 43. And, he has remained in regular contact with them throughout his incarceration. *Id.*

A sentence of 66 months is therefore necessary to address the Defendant's repeated and clearly undeterred criminal conduct, but also appropriate in light of the mitigating factors discussed above.

### The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant (3553(a)(2))

In crafting the Defendant's sentence, the Court should take into account the seriousness of the Defendant's conduct and the need to promote respect for the law. As set forth in the Factual Background, the Defendant unlawfully possessed a firearm for the third time in his adult life, and illegally possessed controlled dangerous substances for at least the second time in his adult life. None of the actions underlying the Defendant's crimes are the result of accident or mistake. The Defendant made a conscious decision to, once again, illegally possess a firearm and narcotics, putting the safety of the public at risk. A sentence that reflects the seriousness of this crime and the Defendant's propensity to recidivate is important not only for specific deterrence, but also for

---

[1] Baltimore Sun, *Baltimore Homicides*, https://homicides.news.baltimoresun.com/?range=2019&cause=all (last visited July 31, 2020).

general deterrence.  A sentence of 66 months will send a message to the community that unlawfully possessing a firearm and narcotics will not be tolerated and will, in fact, result in federal prosecution and lengthy sentences in the Bureau of Prisons that will not be suspended.

Therefore, the Government recommends a sentence of 66 months' imprisonment for the Defendant.

## **Conclusion**

Based on the foregoing, the United States respectfully recommends a sentence of 66 months' imprisonment, which would be sufficient but not greater than necessary to comply with the section 3553(a) factors this Court must consider.  I thank the Court for its consideration of this matter.

Respectfully Submitted,

Robert K. Hur
United States Attorney


_Zachary B. Stendig_
Zachary B. Stendig
Assistant United States Attorney
Lindsay DeFrancesco
Special Assistant United States Attorney


cc:      Counsel via ECF